Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiffs entered into an agreement with the defendant, acting through the Farm Credit Administration, to make an independent audit of the Federal Land Bank of Omaha, Nebraska, and are suing to recover a balance which they claim as compensation under that agreement.
There is no denial that an agreement was entered into. The sole question is the construction to be placed on the technical or equivocal terms which appear on the face of the agreement.
The Farm Credit Administration, being anxious to have an independent and expeditious audit of the Federal Land Bank at Omaha, employed the plaintiffs to perform the work and in the agreement fixed the amount to be paid at $15 per diem for junior accountants and $25 per diem for senior accountants plus traveling expenses and subsistence for those whose headquarters were located outside of Omaha.
When plaintiffs’ accountants worked until 7 P. M. they charged the per diem rate for that time. There were certain boobs of account of the bank which were necessary for the proper functioning of the bank during these hours and which were not accessible and could not be used by the accountants. At times it was necessary for the accountants to perform work after 7 P. M. when these books were available and plaintiff’s accountants then remained at the bank and worked at night. It is for this extra work that plain *479 tiffs charged one-half of the per diem rate, that is, $12.50 in the case of senior accountants, and $7.50 for junior accountants, and for which amount they are now suing.. In order to make a proper and expeditious audit it was absolutely necessary to have these books, otherwise the audit would not reflect the true condition of the bank.
The agreement called for a “per diem” payment but it did not state the number of hours which would constitute a working day. Under its general terms plaintiffs’ accountants could work one hour and claim a full per diem charge or could work twenty-four hours and the same per diem would be paid. This is not a reasonable way of looking at a contract or agreement.
The question comes down to what is meant by the words “per diem” and, as the agreement is vague and indefinite as to what a day’s work should be, it is necessary to resort to the usage or custom of the trade in order to ascertain what a day’s work is, not for the purpose of controlling the rules of law or contradicting the agreement of the parties but solely to make plain a doubtful expression in the contract.
The evidence in the case establishes that seven hours constitute a day’s work in accounting and auditing and all time over seven hours is charged as part of another per diem in proportion to the number of hours worked. It seems to be almost universally established today that seven hours constitute a day’s work. Almost throughout the entire Federal Service seven hours are considered a day’s work. It is true, however, that most of these positions are salaried positions and when overtime work is performed no extra pay can be allowed due to the fact that these positions carry a yearly salary and the Government appropriates no money for overtime work. The services rendered after hours are purely gratuitous and performed patriotically.
The Federal Farm Credit Administration has paid plaintiffs on the basis of $25 per diem for the senior accountants and $15 per diem for the junior accountants and recommended payment to plaintiffs for the overtime work performed, but the Comptroller General disapproved this allowance, holding that plaintiffs could only receive one per diem charge during twenty-four hours, no matter how many *480 hours of work were performed. We do not feel that this is a fair and reasonable interpretation of the agreement. '
In the case of P. Franz & Co., Inc. v. Larney, 176 N. Y. S. 26, 27 (1919), the court said:
* * * I think we may fairly assume that, where no time is mentioned in an agreement to labor or perform services “by the day,” the parties must be presumed to have contracted with reference to a working day. That being so, it was incumbent on the defendant to show conclusively that the contract was for a day of 24 hours.
In Hinton v. Locke, 5 Hill, 437, 439, the court said:
But in the case at bar the usage or custom did not go to vary the contract. It went to explain and ascertain the intention of the parties in relation to a matter upon which the contract was silent. Usage can never be set up in contravention of the contract; but when there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates; and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties. The evidence often serves to explain or give the true meaning of some word or phrase of doubtful import, or which may be understood in more than one sense according to the subject matter to which it is applied. Now here, the plaintiff was to be paid for his workmen at the rate of twelve shillings per day; but the parties have not told us by their contract what they meant by a day’s work. It has not been pretended that it necesarily means the labor of twenty-four hours. How much then does it mean? Evidence of the usage or custom was let in to answer that question. And when we find a universal usage in this business to call ten hours’ labor a day’s work, we have arrived at the true meaning of the word day, as used in this contract.
In the case of Hurst v. W. J. Lake & Co., Inc., 141 Oregon 306, 16 Pac. (2d) 627, 631, the court said:
* * * We believe that it is safe to assume, in the absence of evidence to the contrary, that, when trades *481 men employ trade terms, they attach to them their trade significance. If, when they- write their trade terms into their contracts, they mean to strip the terms of their special significance and demote them to their common import, it would seem reasonable to believe that they would so state in their agreement. Otherwise they would refrain from using the trade term and express themselves in other language. We quote from Nicoll v. Pittsvein Coal Co. (C. C. A.), 269 F. 968, 971: “Indeed when tradesmen say or write anything, they are perhaps without present thought on the subject, writing on top of a mass of habits or usages which they take as matter of course. So (with Prof. Williston) we think that any one contracting with knowledge of a usage will naturally say nothing about the matter unless desirous of excluding its operation; if he does wish to exclude, he will say so in express terms. Williston, Contracts, § 653.” Nothing in the contract repels the meaning assigned by the trade to the two above terms unless the terms themselves reject it. But, if these terms repel the meaning which usage has attached to them, then every trade term would deny its own meaning. We reject this contention as being without merit. We have considered all other contentions presented by the respondent, but have found no merit in them.
Although the Comptroller of the Treasury, in the case of Services of Accountants in Examination of Accounts of Isthmian Canal Commission, 12 Decisions of the Comptroller of the Treasury, 470, held that only one per diem could be paid, in Fox Brothers & Company, 12 Decisions of the Comptroller of the Treasury, 420, he held that—
The contract under which the rope was bought did not specify whether the delivery and payment should be made on the gross or net weight. In the absence of such provision the usage of the trade may be shown to explain the method of delivery and payment. (Robinson v. United States, 13 Wall, 363, 365.)
The papers submitted by you show that it is the usage of dealers and manufacturers of manila and sisal rope to bill it at gross weight in all cases where there is not a special contract for net weight, and that such gross weight includes the necessary burlap and cordage to prepare it for shipment.
*482 Under the facts appearing from the papers transmitted the same principle should be applied in the settlement of this claim that was applied in the claim of the National Lead Company, decided by this office June 27, 1905 (38 MS. Comp Dec., 1411).
You are authorized to pay the claim on the basis of gross weight if otherwise correct.
It is impossible to believe that the Farm Credit Administration, which requires accounting services to be performed in its several banks throughout the country, was ignorant of, and did not know, the custom and usage among accountants. Defendant made but a faint attempt to prove lack of knowledge by the production of one witness who had nothing to do with the making of this agreement, but there is in the record a letter from the Administrative Assistant of the Federal Farm Credit Administration, dated October 8, 1934, in which he states:
* * * Your interpretation would permit per diem charges to be billed in accordance with the well-established practice in the accounting profession where the desire of clients, as was the case in this examination, is that the examination shall be completed as rapidly as possible and without serious interference with the regular work of the institution examined, during regular business hours.
We conclude that the contract was made in accordance with the custom of the trade of the accounting profession, which provided that work of seven hours constituted a working day and all hours after that were to be computed as part of another day’s work and to be paid for in the proportion that the number of hours worked bears to the per diem rate.
We are of the opinion that recovery should be had. Plaintiffs are entitled to recover $6,773.56. It is so ordered.
Williams, Judge; and Green, Judge, concur.
Whitaker, Judge, and Littleton, Judge, took no part in the decision of this case.